402 A.2d 583.

ANTHONY MONTUORI *d.b.a.* MONTUORI'S AUTO SERVICE
*vs.* THE NARRAGANSETT ELECTRIC COMPANY.

JUNE 11, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J.   This civil action was brought in the Superior Court to recover for damages to the plaintiff's property caused by a fire that allegedly resulted from the negligent transmission of electic power by the defendant public utility company. A jury returned a verdict of $10,580 for the plaintiff and, following the entry of judgment, the defendant appealed. Its only assignment of error is to the trial justice's denial of its motion for a directed verdict.

The record in this case, viewed most favorably to plaintiff, as it must be on defendant's motion for a directed verdict, discloses the following: around midnight on October 10,

1972, Colonel McQueeney, then Chief of the Providence Police Department, while driving his automobile near plaintiff's garage, observed a small flame on a utility pole. The flame was moving down the wire leading from the pole to plaintiff's premises. The chief radioed his headquarters, reported the fire, ascertained that it would be taken care of, and, since "[t]here was nothing [he] could do for that pole," he left the scene. A short time later he was informed that a blaze had developed and he returned to the vicinity. By then, plaintiff's garage was engulfed in flames and, before the fire was extinguished, the premises and its contents had been extensively damaged.

The chief's testimony regarding the source of the fire was buttressed by that of an electrical engineer who was called by plaintiff as an expert witness. He testified that the fire originated outside, rather than inside, the premises and, when asked to give his opinion concerning the cause of the fire, he replied that "the conductor[s] out on the cross-arm [on the pole], for some reason, I don't know why—have never seen it before—became [sic] in proximity with each other, so they were able to come in physical contact." That condition, he believed, sent a surge of electricity into the garage's electrical system and thereby caused the fire. Basing his evaluation on the foregoing evidence, the trial justice denied defendant's motion for a direction, upon which he had reserved decision; and defendant now challenges that ruling.

The case raises two questions. The first involves what a plaintiff must establish in a case like this in order to escape a directed verdict; the second is whether the expert testimony evidence relied upon here by plaintiff was couched in terms of "probability" rather than "possibility" and thus overcame the limitations imposed by *Evans* v. *Liguori,* 118 R.I. 389, 398, 374 A.2d 774, 778 (1977) and *Sweet* v. *Hemingway Transport, Inc.,* 114 R.I. 348, 355, 333 A.2d 411, 415 (1975). It is the first question, however, that causes us concern.

With reference to that bothersome question, we acknowledged with approval in *Burdick* v. *South County Public*

*Service Co.,* 54 R.I. 310, 314, 172 A. 893, 895 (1934) the

> "well-established principle of law that one using a dangerous instrumentality is bound to exercise care commensurate with the potential danger of such instrumentality. The duty of companies distributing electricity is therefore to use great care."

The defendant does not challenge the *Burdick* rule. It argues, however, that the record does not contain any evidence that an act or omission of the utility company caused the two conductors to come together and precipitate the damage that resulted. The absence of such evidence, it contends, required that the case be taken from the jury.

We agree that the mere occurrence of an accident does not ordinarily warrant an inference that a defendant was negligent or that its negligence was the proximate cause of the resulting injury. *Salk* v. *Alpine Ski Shop, Inc.*, 115 R.I. 309, 312, 342 A.2d 622, 625 (1975); *Goyette* v. *Sousa*, 90 R.I. 8, 15-16, 153 A.2d 509, 513 (1959). The plaintiff argues, however, that *Burdick* not only imposes a higher duty of care upon a defendant, but that at the same time it also lessens the burden placed on a plaintiff for surviving a motion for a directed verdict. In urging that position, plaintiff implicitly relies on *Reynolds* v. *Narragansett Electric Lighting Co.*, 26 R.I. 457, 59 A. 393 (1904). In that case, this court held that the malfunctioning of an apparatus in a defendant public utilty's sole control

> "is inferentially evidence of negligence on the part of the defendant, thus making out a *prima facie* case for the plaintiffs, and casts upon the defendant the burden of rebutting the same to the satisfaction of the jury." *Id.* at 458, 59 A. at 393. *Cf. Ellis* v. *Waldron,* 19 R.I. 369, 371, 33 A. 869, 869-70 (1896).

Whether the sole control doctrine expressed in *Reynolds* remains the law in this state or whether that doctrine has been or should be incorporated into the res ipsa loquitur principle, and also whether plaintiff on the record in this

case, including his pleadings, may benefit from either theory, are questions that are very much alive here. *See Cinq-Mars* v. *Kelley*, 95 R.I. 515, 188 A.2d 379 (1963). Yet, neither party has briefed or argued those questions. In fairness to the parties, and also because of our concern for an orderly development of the law, these issues should not be resolved until the parties have had an opportunity to brief and argue them.

The defendant shall file a brief addressed to the questions noted on or before July 15, 1979, and the plaintiff shall file his brief within 20 days thereafter. The case will then be assigned to the current argument list for reargument.

It is so ORDERED.

*Gerard McG. DeCelles, Thomas C. Angell,* for plaintiff.

*Roberts & Willey Incorporated, David W. Carroll,* for defendant.