RUTH D'ONOFRIO *vs.* FIRST NATIONAL STORES, INC.

JUNE 18, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J.   This is an action of assumpsit for breach of an implied warranty in the sale to the plaintiff by the defendant of certain foodstuff. At the trial before a jury in the superior court the defendant moved, at the close of the plaintiff's evidence, without objection, that a verdict be directed in its favor. This motion was granted by the trial justice and the plaintiff duly prosecuted her bill of exceptions to this court. The only exception which is being pressed is to the above ruling.

In her declaration, which is in one count, the plaintiff alleges that on a day certain she purchased from the defendant in one of its stores foodstuff, to wit, a sealed tin can containing golden bantam corn; that she selected the said brand of corn relying upon the skill or judgment of the said defendant corporation; that she then and there expressly or by implication made known to the defendant that the said corn was being purchased for human consumption; and that the defendant impliedly then and there warranted the quality or fitness of the said canned corn for human consumption. She further avers that there was a breach of said warranty in that while she was eating said canned corn a piece of metal wire or beading which, unknown to her, had been in said corn, became imbedded in her throat causing certain

injuries for which she is seeking damages from the defendant.

The plaintiff testified, in substance, that on the occasion in question she bought certain groceries in a store operated by the defendant; that part of those groceries consisted of three cans of corn which she selected herself, that is, she asked for a certain brand of canned corn, namely, "Finast", with which she was familiar, and which she had purchased before from the defendant and had used.

Certain portions of general laws 1938, chapter 459, being part of the Sale of Goods Act, are pertinent to the issues raised and are as follows: "§ 15 (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose"; § 15 (2), which provides that where goods are bought by description from one who deals in goods of that description then "there is an implied warranty that the goods shall be of merchantable quality"; § 15 (4): "In the case of a contract to sell or a sale of a specific article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

In support of the ruling of the trial justice, the defendant first argues that the plaintiff must recover on the case made by her declaration, and that her proof must substantially correspond with the material allegations of her pleadings, whereas in fact she failed to prove the cause of action she declared on, thereby bringing about, in substance, a failure of proof, or a material variance between her pleadings and her proof. The defendant points out that the plaintiff's declaration appears to be drawn to meet the provisions of § 15 (1), but that her proof fails to show any reliance on the seller's skill or judgment, and seems to bring her case within the provisions of § 15 (4).

Undoubtedly certain language in the plaintiff's declaration closely resembles part of the language appearing in

§ 15 (1). Nevertheless the plaintiff has not declared on said subsection by specific reference thereto by number, nor has she in her declaration quoted from said subsection. On the other hand, the portion of her declaration in which she alleges the defendant's implied warranty and the breach thereof tends to indicate that she had § 15 (2) in mind as a basis for her recovery. That portion of her declaration reads as follows: "And plaintiff says that the defendant corporation did then and there impliedly warrant the quality or fitness of the aforesaid canned corn for human consumption. And plaintiff avers that there has been a breach of the aforesaid implied warranty of quality or fitness". It may be noted that the word "quality" occurs only in said § 15 (2).

The declaration, therefore, sounds partly under § 15 (1) and partly under § 15 (2). It appears to contain in the portion above quoted an allegation, in substance, though not in specific language, that there was on the part of the defendant an implied warranty of the merchantability of the corn in question, which warranty had been breached. While the declaration may have been open to the criticism that it was vague and indefinite, if not duplicitous, nevertheless it was not demurred to, and no bill of particulars was asked for by the defendant. Under such circumstances the plaintiff can take advantage of such proof as may properly be applicable to any part of her declaration, and the defendant is not in a position to urge that there is a failure of proof or a variance between the allegations of the declaration and the plaintiff's evidence in support thereof. We find, therefore, that there was no such material failure of proof or variance in the above respect as would justify the direction of a verdict for the defendant on that ground.

The defendant also contends that the direction of a verdict in its favor was proper because the evidence showed a situation which brought the plaintiff's case under the provisions of § 15 (4) and, therefore, the defendant was not held to any implied warranty that the canned corn it sold the plaintiff was fit for any particular purpose, even though the

defendant impliedly knew that said corn was for human consumption. In our opinion the above contention is not sound. To support it the defendant relied chiefly on *Matteson* v. *Lagace,* 36 R. I. 223. That case is clearly distinguishable on its facts from the instant case. The *Matteson* case involved the purchase, under a trade name, of a steam boiler for the particular purpose of heating a skating rink. Apparently the only complaint was that it was not adequate for such purpose. The court held that § 15 (1) was limited by § 15 (4), and that, under the facts appearing in evidence, there was no implied warranty on the part of the defendant that the boiler would be sufficient to heat the rink. The question of the general merchantability of the boiler was not raised and was not involved in the decision of the case.

On the other hand, it has been held that in the purchase of foodstuffs for human consumption, under circumstances similar to those appearing in evidence in the present case, the provisions of § 15 (2) respecting the existence of an implied warranty of merchantability apply, and that the provisions of § 15 (4) do not preclude a finding, under said § 15 (2), of a warranty of merchantability and of a breach thereof. *Ryan* v. *Progressive Grocery Stores, Inc.,* 255 N. Y. 388; *Botti* v. *Venice Grocery Co.,* 309 Mass. 450. In the last-named case, at page 456, the court uses the following language: ". . . we think the mere fact that an article sold happens to have a trade name does not, in and of itself, bring the sale under cl. (4), but if it does, that the warranty contained in cl. (2) is not excluded. . . . Fitness for consumption of food well may be equivalent to fitness for the particular purpose for which food may be bought, but it is also equivalent to fitness for the general purpose for which food is usually sold to the consumer."

We are of the opinion that, in view of the facts and circumstances appearing in evidence, the two cases just cited set out the principles of law which apply to and govern the instant case. In our judgment such principles appear to be particularly applicable in the ordinary case where the sale of foodstuffs for human consumption is involved.

Further, this court in *Keenan* v. *Cherry & Webb,* 47 R. I. 125, had occasion to discuss merchantability in its relation to a case which had been brought under § 15 (1) for the alleged breach of an implied warranty of fitness of a fur coat. In holding that the section under consideration included a warranty of merchantability the court took occasion, on page 129 of its opinion, to define that term as follows: "Merchantability means that the article sold shall be of the general kind described and reasonably fit for the general purpose for which it shall have been sold. The buyer's particular purpose may be equivalent to nothing more than his general purpose or it may relate to his more specific purpose. . . . Under the Sales Act a dealer who sells articles which ordinarily are used in but one way impliedly warrants fitness for use in that particular way unless there is evidence to the contrary. This is only a warranty of merchantability."

In view of her evidence we find, therefore, that the plaintiff's case came under and was governed by the provisions of § 15 (2); and that she was entitled to urge that the defendant impliedly warranted that the canned corn it sold her was of merchantable quality as above defined; and that if it was determined that such implied warranty was breached by the defendant, then to have her damages, if any, fixed. Such being the case it was error for the trial justice to direct a verdict for the defendant.

The plaintiff's exception is sustained, and the case is remitted to the superior court for a new trial.

*Fergus J. McOsker,* for plaintiff.

*Edward T. Richards, Bancroft Littlefield, Edwards & Angell,* for defendant.