938 F.2d 1463
 Prod.Liab.Rep.(CCH)P 12,941
Maria Louise DiPALMA and Bruno
DiSciullo, Co-Executors of the Estate of Dr. Nicola DiPalma,
Deceased, Plaintiffs, Appellants,
v.
WESTINGHOUSE ELECTRIC CORP., Defendant, Appellee.
 No. 91-1219.
 United States Court of Appeals,
First Circuit.
 Heard June 5, 1991.
Decided July 19, 1991.
 
 1
 Thomas W. Lyons, with whom Benjamin V. White and Vetter & White, Providence, R.I., were on brief for defendant, appellee.
 
 
 2
 Before SELYA and CYR, Circuit Judges, and KEETON,* District Judge.
 
 
 3
 KEETON, District Judge.
 
 
 4
 Dr. Nicola DiPalma was injured on July 17, 1985 at Lincoln Greyhound Park in Rhode Island when he fell after the escalator on which he was riding shuddered or jolted. Dr. DiPalma then brought suit against Westinghouse Electric Corporation (hereinafter, defendant-appellee) as manufacturer and maintenance contractor. After he filed suit, Dr. DiPalma died from causes unrelated to his accident at Lincoln Greyhound Park. Maria Louise DiPalma and Bruno DiSciullo, co-executors of his estate, were substituted as plaintiffs; they are hereinafter referred to as plaintiffs-appellants. The amended complaint, on which plaintiffs-appellants went to trial, contained five counts. The district court concluded that two of the counts were duplicative and characterized the claims as being reduced to three: negligence, strict liability and failure to warn. Plaintiffs-appellants do not contest this characterization of the amended complaint.
 
 
 5
 At the close of the evidence presented by plaintiffs-appellants, the district court granted defendant-appellee's motion for directed verdict and entered judgment in its favor. Because we conclude that no reasonable juror could find in favor of plaintiffs-appellants on any of their three claims, we affirm.
 
 I. Standard of Review; Facts
 
 6
 The standard of review we are to apply is well settled:
 
 
 7
 In order to uphold a grant of a directed verdict, we must find that, viewing the evidence in the light most favorable to the non-moving party, reasonable jurors could come to but one conclusion. We must give plaintiff every benefit of every legitimate inference. However, such inferences may not rest on conjecture or speculation, but rather the evidence offered must make 'the existence of the fact to be inferred more probable than its nonexistence.'
 
 
 8
 Goldstein v. Kelleher, 728 F.2d 32, 39 (1st Cir.), cert. denied, 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984) (citations omitted).
 
 
 9
 The facts in this case are straightforward. Dr. DiPalma testified at his deposition that on July 17, 1985, he was riding down an escalator at Lincoln Greyhound Park when, as he neared the bottom, the escalator "shuddered and shook" and he fell to the ground, sustaining injury. Our review of the record reveals that plaintiffs-appellants did not present any admissible evidence regarding any design or manufacturing defect in the escalator. Nor did they present evidence of any malfunction, arising after the escalator was installed, that defendant-appellee failed to discover and fix. Moreover, plaintiffs-appellants failed to demonstrate that defendant-appellee was on notice that the escalator had ever shuddered or shook before the date of Dr. DiPalma's accident. Nevertheless, plaintiffs-appellants urge us to conclude that a reasonable juror could find in their favor on their negligent maintenance, strict liability and failure to warn claims. We consider each claim separately.
 
 II. Res Ipsa Loquitur
 
 10
 Given the total lack of direct evidence in the record to support a finding that defendant-appellee was negligent in maintaining the escalator, plaintiffs-appellants contend that they proved their case by circumstantial evidence. They invoke the doctrine of res ipsa loquitur to support their contention that a reasonable juror could find in their favor on their negligence claim. In Parrillo v. Giroux Co., 426 A.2d 1313, 1320 (R.I.1981), the Supreme Court of Rhode Island adopted, as the rule in Rhode Island, the doctrine of res ipsa loquitur set forth in Restatement (Second) of Torts Sec. 328(D) (1965):
 
 
 11
 It is our considered judgment that the evidentiary rule expressed in Sec. 328(D) of the Restatement (Second) Torts (1965) supplies a far more logical and orderly approach to circumstantial proof of negligence than has formerly been employed in this jurisdiction.
 
 
 12
 Restatement (Second) of Torts Sec. 328(D) (1965) reads as follows:
 
 
 13
 (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
 
 
 14
 (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
 
 
 15
 (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
 
 
 16
 (c) the indicated negligence is within the scope of defendant's duty to the plaintiff.
 
 
 17
 (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
 
 
 18
 (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.
 
 
 19
 Even if the accident described by evidence presented by plaintiffs-appellants is of a type that does not ordinarily happen in the absence of negligence--an issue that we decline to decide now (but cf. Colmenares Vivas v. Sun Alliance Ins. Co., 807 F.2d 1102, 1105 (1st Cir.1986) ("... an escalator handrail probably would not stop suddenly while the escalator continues moving unless someone had been negligent"))--we nevertheless affirm the district court's rejection of the res ipsa loquitur argument because plaintiffs-appellants failed to present evidence at trial sufficient to support a finding that it was more probable than not that negligence of defendant-appellee was a cause of Dr. DiPalma's injury. Restatement (Second) of Torts Sec. 328(D)(1)(b) (1965).
 
 
 20
 In Parrillo v. Giroux Co., 426 A.2d at 1320, the Supreme Court of Rhode Island focused on Sec. 328(D)(1)(b) when it stated:
 
 
 21
 [T]he critical inquiry is not control, but whether a particular defendant is the responsible cause of the injury.... [T]he plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt, and it is enough that he make out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant.
 
 
 22
 (Emphasis in original) (internal citations omitted). The Modular Escalator Preventive Maintenance Agreement, dated September 2, 1980, between defendant-appellee and Lincoln Greyhound Park (the "Maintenance Agreement") (see Plaintiff's Trial Exhibit 2) defines the maintenance obligations of defendant-appellee with respect to the escalators at Lincoln Greyhound Park. At page 3 of the Maintenance Agreement, defendant-appellee explicitly disclaims responsibility for the maintenance of certain parts of the Lincoln Greyhound Park escalators:
 
 
 23
 We [defendant-appellee] assume no responsibility for the following items, which are not included in this agreement:
 
 Exterior panels
 Skirt & deck panels
 Balustrades
 
 24
 Power Switches, fuses and feeders to controllers
 
 
 25
 Our review of the record reveals that plaintiffs-appellants presented no evidence at trial indicating what parts of the escalator they contend were negligently maintained. In the absence of such evidence, even if it is assumed that negligent maintenance was a cause of Dr. DiPalma's injuries, it is impossible for any reasonable juror to find that it was defendant-appellee's negligence, and not that of a third party responsible for the maintenance of the items excluded in the Maintenance Agreement, that caused Dr. DiPalma's injury. See Restatement (Second) of Torts Sec. 328 comment f (1965) ("in any case where there is no doubt that it is at least equally probable that the negligence was that of a third person, the court must direct the jury that the plaintiff has not proved his case").
 
 III. Strict Liability
 
 26
 In Ritter v. Narragansett Electric Company, 109 R.I. 176, 283 A.2d 255, 261 (1971), the Rhode Island Supreme Court held "that the doctrine of strict liability should become a part of the law of ... [Rhode Island]," and thus it adopted the rule of strict liability set forth in Restatement (Second) of Torts Sec. 402A (1965). The Rhode Island Supreme Court went on to set forth the elements of a strict product liability claim under Rhode Island law:
 
 
 27
 [T]he concept of strict liability in tort contemplates, first, that there must be a defect in the design or manufacture which makes the product unsafe for its intended use, and, second, that liability does not attach unless the plaintiff was using the product in a way in which it was intended to be used when he was injured by it.
 
 
 28
 Ritter, 283 A.2d at 262.
 
 
 29
 The record is devoid of any evidence of any defect in the design or manufacture of the escalator that led to Dr. DiPalma's injury. Plaintiffs-appellants have essentially argued, both before the district court and before us, that because Dr. DiPalma was injured on the escalator after the escalator "shuddered and shook," then he must have been injured as a result of a design or manufacturing defect in the escalator. However, such an argument, in the absence of any evidence to support a finding that there was a design or manufacturing defect in the escalator, is the exact sort of conjecture and speculation that the Rhode Island Supreme Court has specifically forbidden juries to consider in strict liability cases. Geremia v. Benny's, Inc., 119 R.I. 868, 383 A.2d 1332, 1334 (1978). Accordingly, we affirm the district court's granting of the motion for directed verdict with respect to plaintiffs-appellants' strict liability claim.
 
 IV. Failure to Warn
 
 30
 Rhode Island recognizes a tort cause of action against a seller of goods if the seller fails "to warn purchasers of a dangerous defect in the product if the seller knows or has reason to know that the product poses a danger to consumers." Scittarelli v. Providence Gas Co., 415 A.2d 1040, 1043 (R.I.1980). The same duty to warn of known or reasonably knowable dangerous defects is likewise imposed on a manufacturer that also acts as the seller of goods made dangerous by such defects. Thomas v. Amway Corp., 488 A.2d 716, 722 (R.I.1985). Plaintiffs-appellants maintain that the foregoing cause of action for failure to warn is a type of strict liability claim; defendant-appellee adamantly insists that it is a negligence claim. The Rhode Island Supreme Court appears to have labeled the cause of action for failure to warn both negligence and strict liability. Compare Scittarelli, 415 A.2d at 1043 ("in Rhode Island the failure to execute this duty [to warn of dangerous defects] will constitute actionable negligence") with Thomas, 488 A.2d at 722 (recognizing a strict liability cause of action for failure to warn).
 
 
 31
 The nomenclature to be applied to a failure to warn cause of action has no significance for this case, however. It is clear under Rhode Island law that the duty to warn, the violation of which is actionable by means of the so-called strict liability cause of action, is measured, in all respects material to this case, by the same standard as the duty to warn that is enforceable in a negligence cause of action. See Thomas, 488 A.2d at 722 ("under strict liability, a seller need only warn of those dangers that are reasonably foreseeable"). That the Rhode Island Supreme Court recognizes the similarity between the strict liability and negligence causes of action for failure to warn is confirmed by the fact that it cited Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), in Thomas to support its explanation of the strict liability cause of action. In Borel, 493 F.2d at 1088, the Fifth Circuit, interpreting Texas law, stated:
 
 
 32
 As explained in comment j to section 402A, a seller has a responsibility to inform users and consumers of dangers which the seller either knows or should know at the time the product is sold. The requirement that the danger be reasonably foreseeable, or scientifically discoverable, is an important limitation of the seller's liability. In general, '[t]he rule of strict liability subjects the seller to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product.' Section 402A, Comment a. This is not the case where the product is alleged to be unreasonably dangerous because of a failure to give adequate warnings. Rather, a seller is under a duty to warn only of those dangers that are reasonably foreseeable. The requirement of foreseeability coincides with the standard of due care in negligence cases in that the seller must exercise reasonable care and foresight to discover a danger in his product [emphasis added] and to warn users and consumers of that danger [emphasis in original].
 
 
 33
 (Citation omitted).
 
 
 34
 No evidence was offered at trial to support a finding (1) that any defect or other condition that would involve a duty to warn existed when the escalator left the control of defendant-appellee as manufacturer-supplier, or (2) that a condition thereafter developed of which defendant-appellee as maintenance contractor knew or should have known existed before the shuddering or jolting occurred that allegedly caused the accident. Thus, there is no evidence in the record to support a finding by any reasonable juror that defendant-appellee knew or should have known that the escalator might shudder and shake at the time that it sold the escalator to Lincoln Greyhound Park, or at any other time before Dr. DiPalma's accident. Because of this lack of evidence, we need not decide whether precedents regarding a manufacturer-supplier's duty to warn should be extended to a maintenance contractor; the evidence falls short of the standard for opposing a directed verdict motion regardless of the capacity in which defendant-appellee is viewed. The district court ruled correctly in allowing the motion for directed verdict with respect to the failure to warn claim.
 
 The judgment of the district court is
 
 35
 Affirmed. Appellee is awarded costs.
 
 
 
 *
 Of the District of Massachusetts, sitting by
 designation.